UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

DEBRA DUNN,                        )
                                   )
        Plaintiff,                 )        1:12-CV-252
                                   )
   v.                              )
                                   )        Judge Curtis L. Collier
CHATTANOOGA PUBLISHING             )
COMPANY,                           )
                                   )
        Defendant.                 )

## M E M O R A N D U M

Before the Court is Defendant Chattanooga Publishing Company's ("CPC") motion for

summary judgment (Court File No. 31). CPC argues Plaintiff Debra Dunn ("Dunn") has failed to

establish a prima facie case of disability discrimination, failed to exhaust her administrative

remedies with respect to her accommodation claim, otherwise sought an unreasonable

accommodation, and CPC in fact accommodated her disability. Dunn responded in opposition to

CPC's motion (Court File No. 33) and CPC replied to Dunn's response (Court File No. 35). The

Court concludes Dunn has met her burden to establish a prima facie case of discrimination and to

demonstrate CPC's proffered explanation is pretextual. The Court also concludes Dunn adequately

exhausted her accommodation claim and sought a reasonable accommodation. Accordingly, the

Court will **DENY** CPC's motion for summary judgment (Court File No. 31).

## I.      FACTUAL AND PROCEDURAL BACKGROUND

CPC is a Chattanooga, Tennessee based publishing company. Dunn began working for CPC

in September 2010 as the administrative assistant to Russell Lively, controller and director of

operations (Court File No. 31-2, Lively Dep., pp. 5-6). His job duties were varied and included

oversight over facilities, printing and press operations, and financial functions. He reported directly

to the president of the company, Jason Taylor (*id.* at p. 7). Dunn's duties as Lively's assistant were nearly as broad: she was to assist him in his duties (*id.* at pp. 26-27). No one served in this position prior to Dunn, and a new assistant was not hired until over one year after Dunn left CPC.

In spring 2011, Dunn was diagnosed with stage IV breast cancer (Court File No. 31-1, Dunn Dep., pp. 9-10). Dunn disclosed her cancer diagnosis to Lively the same day she was informed of it (*id.* at p. 10). Dunn then underwent chemotherapy and was forced to work a shorter schedule. Between April and July 2011, Dunn relied on her accrued sick leave to take every third Friday off in order to attend these chemotherapy sessions (*id.* at p. 12, 15). She also worked what she calls a "flexible schedule" from 9:00 am to 4:00 or 4:30 pm on workdays rather than the normal 8:00 am to 5:00 pm schedule, although she would work through her lunch hour to accommodate her shorter hours (*id.* at p. 19); (Court File No. 34, Dunn Aff., ¶¶ 5, 6). At the time, Mr. Lively expressed no dissatisfaction with this schedule, nor does CPC suggest that Dunn failed to complete any tasks as a result of it.

Following chemotherapy, Dunn knew she would have to undergo surgery (Court File No. 31-1, Dunn Dep., pp. 16-17). Due to "blood-level issues," her surgery was delayed numerous times. Dunn herself wanted the surgery to be scheduled in September 2011, because at that point she would have been employed by CPC for one year and would be entitled to medical leave under the Family and Medical Leave Act ("FMLA") (*id.*).[1] Dunn claims she notified Lively several times that she would eventually require surgery (Court File No. 34, Dunn Aff., ¶ 3).

---

[1] Dunn also sued CPC for FMLA retaliation but the Court granted CPC's motion to dismiss this claim (Court File Nos. 22, 23). As more fully explained in the Court's order and memorandum, Dunn is not entitled to sue under the FMLA because she had not been employed by CPC for one year at the time her employment was terminated.

2

On August 18, 2011, Dunn informed Lively that her surgery would be scheduled in September, after her one-year employment anniversary, although no specific date had yet been set (Court File No. 33-1, Dunn Dep., p. 20). She told Lively if the cancer was as her doctors anticipated, she would need four to six weeks for recovery. If there was more cancer than the doctors anticipated, the recovery period could be as long as two months (*id.*).[2] Dunn offered to train a temporary replacement while she was out for recovery and Lively asked her to produce a job description in case he made use of this suggestion (*id.*). Later that day, Dunn emailed Lively, informing him she had a pre-surgery appointment moved to September 1, 2011, which would enable her to take FMLA leave (Court File No. 33-5, Dunn email).

Shortly after this discussion, Lively called Dunn into his office and terminated her. According to Dunn, Lively explained that their arrangement was "just not working" and he needed "someone who can spend more hours here" (Court File No. 33-1, Dunn Dep, p. 22). Because he was expecting a "big promotion" he needed "someone who can work full-time hours, possible overtime" but he knew she could not "do that right now" (*id.*). Dunn apologized for her health-related absences but noted "obviously, [she] had no control over getting cancer" (*id.*). Lively responded that Dunn could not stay on as his assistant, adding, "I can't have times when I don't have somebody here to do the work that I need done . . . You've got to deal with your cancer and . . . that's what you should do, is just deal with that right now" (*id.*). Lively, for his part, does not remember many specifics of the conversation beyond telling her "we didn't have a good fit" (Court File No. 31-2, Lively Dep., pp. 92-93).

---

[2] Dunn eventually underwent a double mastectomy on October 13, 2011 and endured a recovery period of two months.

3

Lively does claim that he told Dunn there may be opportunities in other departments, including opportunities in the circulation department. He asked her to let him know by the following Monday whether she wanted to make use of those opportunities (*id.* at p. 96). Dunn, however, denies he mentioned such opportunities and claims he merely told her to check with human resources to determine if there were any openings (Court File No. 34, Dunn Aff., ¶ 10). She also claims he told her to re-apply for her previous job at Covenant Transport, but she thought it unfair to apply for a job and immediately take two months off for surgery (*id.* at ¶ 11).

Lively claims he was displeased with Dunn's performance throughout her tenure. He stated that she "never progressed to a point where I could keep giving her more projects" and that she never "progress[ed]" to his expectations (Court File No. 31-2, Lively Dep., at p. 35). However, when pushed by counsel about the specifics of his displeasure, Lively was unable to identify exactly how it was that Dunn was deficient in her performance. He claimed she "plateaued" and did not show "initiative" (*id.*). The only specific example he could provide was her unsuccessful attempt to reduce a charge on his credit card, although he then admitted he later failed at the same task (*id.* at pp. 36-37). He also stated broadly that she "did not initiate actions" with him and did not find out what his needs were or what his day was going to be (*id.* at p. 56). Both Dunn and Lively appear to agree that he only confronted her about these problems once, and in that case he only stated they should have more meetings (*id.* at pp. 56-57); (Court File No. 33-1, Dunn Dep., p. 103). Lively claims those meetings ended due to Dunn's "medical challenges" (*id.* at pp. 56-57).

Lively also claims he discussed this dissatisfaction with Taylor and human resources in the months preceding Dunn's termination (Court File No. 31-2, Lively Dep., p. 29). Matthew Salada, CPC's director of human resources at the time, could not remember the exact date Lively first

approached him about his concerns but noted it "was not like the day before" Dunn was terminated and may have been "a couple of months [before then]," which would have put the conversation around June 2011 (Court File No. 31-3, Salada Dep., p. 36). Apparently, Lively discussed his concern that Dunn would soon be needing a substantial period of time off and told Salada "she was already a problematic employee, [who] wasn't getting the work done that he needed her to get done, that she had already used up all of her leave and that he was going to need someone doing that job who was actually there every day - - or, you know, on a regular basis - - to get the work done" (*id.* at p. 35). When Lively first came to Salada, "[h]e did express that [Dunn's flex schedule] was difficult, but he didn't say it was a problem, per se. But we had a definite discussion that it was her performance that really made his - - made it problematic for him to keep her in that position" (*id.* at p. 37). According to Salada, regardless of Dunn's need for time off, Lively intended to "make a move" on the position. But these issues came to a head when Dunn informed Lively her surgery was impending:

> But it wasn't until Ms. Dunn, as I recall it, came into our office and said: "Hey, I've kind of got a date certain now, I'm definitely going to get treatment and it's going to be after I qualify for FMLA," that I went upstairs, talked to Mr. Taylor; and we both went in to Mr. Lively and said: "Look, it's going to happen. If you don't make a decision about this to deal with her performance, you are going to be stuck with her as your assistant while she's on twelve weeks of leave. So you need to make a decision, before she becomes eligible for FMLA leave, as to whether or not you want to act on her performance or not."

(*id.* at pp. 37-38).

Although Lively told Dunn she would no longer be his assistant on August 18th, she was scheduled to remain his assistant until August 26th. But Lively heard from some of the employees that Dunn was saying negative things about her termination, and so he told her not to come in on her last day (Court File No. 31-2, Lively Dep., p. 125-26). Lively did not hire a replacement for Dunn's

5

position until January 2013. However, Lively and Salada discussed hiring a replacement for Dunn but declined to do so on the advice of counsel (Court File No. 33-4, Salada Dep., p. 59). Lively had also mentioned his intention to fill the position to at least one other employee (Court File No. 33-6, Austin Dep., pp. 25-26).

After her termination, Dunn filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), which issued her a Notice of Right to Sue. The EEOC charge included the following.

> I was employed by Chattanooga Publishing Company as an Administrative Assistant. In Spring 2011, I was diagnosed with an illness that resulted in a disability. I continued to perform my job functions with a flexible schedule.
> However, on August 18, 2011, I notified Mr. Lively that I would need to have surgery for my disability in September 2011 and would need medical leave. Thirty minutes later Mr. Lively terminated my employment because "you are sick."

(Court File No. 31-1, Dunn Dep., Ex. 14). Dunn then filed a complaint alleging violations of the Tennessee Disability Act ("TDA"), Tenn. Code Ann. § 8-50-103, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et. seq.*, and the FMLA, 29 U.S.C. § 601, *et. seq.* CPC later filed a motion to dismiss Dunn's FMLA claim, which the Court granted.

## II.    STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court should view the evidence, including all reasonable inferences, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

6

To survive a motion for summary judgment, "the nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). Indeed, a "[plaintiff] is not entitled to a trial on the basis of mere allegations." *Smith v. City of Chattanooga*, No. 1:08-CV-63, 2009 WL 3762961, at *2 (E.D. Tenn. Nov. 4, 2009) (explaining the Court must determine whether "the record contains sufficient facts and admissible evidence from which a rational jury could reasonably find in favor of [the] plaintiff"). In addition, should the nonmoving party fail to provide evidence to support an essential element of its case, the movant can meet its burden of demonstrating no genuine issue of material fact exists by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

At summary judgment, the Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). If the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court should enter summary judgment. *Id.* at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## III.    DISCUSSION

CPC argues the Court should grant summary judgment in its favor because Dunn has failed to offer sufficient indirect evidence supporting her discrimination claim, she failed to adequately exhaust her administrative remedies with respect to her accommodation claim, the accommodation she sought was unreasonable, and CPC in fact accommodated her disability.  Because the Court previously dismissed Dunn's FMLA claim, only her TDA and ADA claims remain.  Dunn offers two bases of liability: discriminatory discharge and failure to accommodate.  The Court will address

Dunn's discrimination claim and accommodation claim separately.

In considering Dunn's discrimination claim, the Court need not bifurcate its analysis, because the TDA mirrors the ADA and the same standards apply to both statutes.[3] *See Barnes v. Goodyear Tire & Rubber Co.*, 48 S.W.3d 698, 705 (Tenn. 2000) *abrogated in part by Gossett v. Tractor Supply Co., Inc.*, 320 S.W.3d 777 (Tenn. 2010); *see also Cardenas-Meade v. Pfizer, Inc.*, 510 F. App'x 367, 369 n.2 (6th Cir. 2013). However, "[t]he TDA does not require that a reasonable accommodation be made," *Cardenas-Meade*, 510 F. App'x at 369 n.3 (citing Tenn. Code Ann. § 8–50–103), so the Court considers Dunn's accommodation claim only under the ADA.

## A. Discriminatory Discharge

The ADA prohibits employers from discriminating against a qualified individual "on the

---

[3] Although these statutes are still congruent with respect to the substance of Dunn's claims, the Tennessee Supreme Court rejected the *McDonnell Douglas* framework at summary judgment as "incompatible with Tennessee summary judgment jurisprudence." *Gossett v. Tractor Supply Co., Inc.*, 320 S.W.3d 777 (Tenn. 2010). Various courts, including the Sixth Circuit, described this new standard as a state procedural rule that had no application in federal court. *See e.g.*, *Theus v. GlaxoSmithKline*, 452 F. App'x 596, 602 n.8 (6th Cir. 2011) (considering *Gossett*'s change procedural where the issue was undisputed); *Reed v. Inland Intermodal Logistics Servs., LLC*, No. 09–2607, 2011 WL 4565450, at *5 (W.D. Tenn. Sept. 29, 2011). *But see Cobb v. Keystone Memphis, LLC*, 526 F. App'x 623, 627-28 (6th Cir. 2013) (declining to decide whether *Gossett* binds federal courts sitting in diversity). Regardless, the Tennessee legislature later adopted the *McDonnell Douglas* framework by statute in the Tennessee Human Rights Act, Tenn. Code Ann. § 4–21–311(e), the "definitions and remedies" of which apply to the TDA, *Barnes*, 48 S.W.3d at 705. Moreover, because the Court concludes Dunn's claims survive under the *McDonnell Douglas* framework, her claim would also survive under the more "employee-favorable" *Gossett* standard. *See Hale v. ABF Freight System, Inc.*, 503 F. App'x 323, 332 n.7 (6th Cir. 2012) ("Regardless, as explained in more detail below, Hale has established a prima facie case and produced sufficient evidence of pretext to cast doubt on ABF's proffered nondiscriminatory reason and allow an inference of discrimination. Thus, under *Gossett*'s more employee-favorable standard, ABF is clearly unable to show that Hale cannot prove an essential element of his age discrimination claim.").

basis of disability." 42 U.S.C. §12112(a). Absent direct evidence of discrimination,[4] Plaintiff must

establish a prima facie case demonstrating "1) he or she is disabled; 2) otherwise qualified for the

position, with or without reasonable accommodation; 3) suffered an adverse employment decision;

4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position

remained open while the employer sought other applicants or the disabled individual was replaced."

*Whitfield v. Tennessee*, 639 F.3d 253, 258-59 (6th Cir. 2011). Once Dunn has established a prima

facie case of disability discrimination, the burden shifts to CPC to "articulate a non-discriminatory

explanation for the employment action." *Id.* at 259 (citing *McDonnell Douglas Corp. v Green*, 411

U.S. 792, 802-04 (1973)). If CPC does so, "the burden shifts back to [Dunn] to prove that [CPC's]

explanation is pretextual." *Id.* Despite the shifting burdens of production, Plaintiff ultimately bears

the "burden of persuading the trier of fact that the defendant intentionally discriminated against the

plaintiff."[5] *Macy v. Hopkins Cnty. School Bd. of Educ.*, 484 F.3d 357, 364 (6th Cir. 2007) (citation

and internal quotation marks omitted).

### 1. Prima Facie Case

Dunn must first establish a prima facie case of discrimination. For the purposes of this

motion, CPC concedes that Dunn satisfies the first four prongs of a discriminatory discharge prima

facie case (Court File No. 32, p. 10 n.66). CPC argues summary judgment must be granted in its

---

[4] The parties dispute whether Lively's comments about Dunn's cancer constitute direct evidence of discrimination. Because the Court holds Dunn has offered sufficient indirect evidence to survive summary judgment, the Court need not consider this question.

[5] ADA plaintiffs in this circuit previously were required to prove they suffered adverse employment action solely because of their disabilities. *Monette v. Electronic Sys. Corp.*, 90 F.3d 1173 (6th Cir. 1996). However, the Sixth Circuit recently reversed course and held that ADA plaintiffs need only demonstrate disability is the "but-for" cause of the adverse action, not the sole cause. *Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312 (6th Cir. 2012).

favor because Dunn's position was not filled for seventeen months following her termination.

CPC almost entirely relies upon *Lilley v. BTM Corp.*, 958 F.2d 746 (6th Cir. 1992), an Age Discrimination in Employment Act ("ADEA") case.[6]  In *Lilley*, the plaintiff proceeded to trial and obtained a substantial judgment on the basis of age discrimination.  However, on appeal, the Sixth Circuit held that the plaintiff failed to establish that he was replaced by a younger person, which is a required element of the ADEA prima facie case. *Id.* at 752 ("A plaintiff may prove a prima facie case of age discrimination by establishing that: (1) he was a member of the protected class [over age 40]; (2) he was subjected to adverse employment action; (3) he was qualified for the position; and (4) he was replaced by a younger person.").  After he was terminated, the plaintiff's duties were assumed by his employer's remaining staff.  It was undisputed that the employer suffered a downturn in business at the time the plaintiff was terminated.  Nine months later, however, business picked up and a younger individual was hired to the sales staff.  Rejecting the plaintiff's argument he was "replaced" by this younger individual, the court held "[t]he fact that nine months later business had picked up to the extent that another employee was needed in the sales department does not mean that Boehm replaced Lilley in any sense relevant to inferring age-based discrimination." *Id.*

CPC argues a similar outcome is called for here: it is undisputed that Dunn's position was not filled for some *seventeen* months, almost double the time period considered to be too lengthy to raise an inference of discrimination in *Lilley*.  However, this case is distinguishable from *Lilley* for several reasons.  Unlike the plaintiff in *Lilley*, Dunn may establish a prima facie case by

---

[6] CPC cites two other cases, *Sandhu v. Napolitano*, No. 10–12593, 2011 WL 5507405 (E.D. Mich. Nov. 10, 2011) and *Vertrees v. American Vulkan Corp.*, No. 8:10–cv–2164–T–24 EAJ, 2012 WL 95306 (M.D. Fla. Jan. 12, 2012), both of which rely on *Lilley*.

demonstrating that she was replaced *or* that her position remained open while CPC sought other applicants. Dunn's claim could survive even in light of the seventeen-month gap if she showed that the position remained open and CPC sought to fill it. CPC points to Lively's testimony that he did not "even think" about replacing Dunn. However, Dunn offers testimony of another employee who stated that Lively acknowledged his intent to replace Dunn and would not allow Dunn's desk to be removed because he intended to fill the position (Court File No. 33-6, Austin Dep., pp. 25-26). Salada, CPC's head of human resources at the time, also admitted that he and Lively discussed replacing Dunn, (Court File No. 33-4, Salada Dep., p. 59), which wholly conflicts with Lively's own testimony that he did not even think about replacing her. Thus Dunn has produced evidence that her position, which CPC concedes *was* later filled, was kept open throughout this time period. Given that the position was later filled, it would be reasonable to infer CPC sought applications for the position.

But CPC's main point is not that the position was empty, and remained so, when it subsequently sought out a replacement. Rather, CPC stresses, as was the case in *Lilley*, that the lengthy, seventeen-month period during which the position was empty suggests discrimination was not the cause of Dunn's termination. However, in *Lilley* the employer's position was supported by evidence of a downturn and subsequent upturn in business consistent with the plaintiff's termination and his "replacement." Here, on the other hand, no evidence of such business circumstances has been presented. Unlike *Lilley*, the nondiscriminatory reasons given in this case–both that Dunn was a subpar employee and that Lively needed a full-time assistant–are discredited by the seventeen-month break between Dunn's termination and the hiring of a replacement. If Lively was in need of an active assistant who took initiative and could work a full-time schedule without significant

11

breaks, then how did he manage during the period the position was unfilled?[7]  In *Lilley* the length of time between the plaintiff's firing and the "replacement's" hiring indicated a lack of discrimination; here, the length of time at issue is *more* indicative of discrimination.  Accordingly, the Court concludes Dunn has established the fifth prong of the prima facie case.

Even were the Court less convinced that the fifth prong is satisfied in this case, when the Sixth Circuit adopted the *McDonnell Douglas* framework in the ADA context, it recognized that "the precise characterization of the [replacement] prong of the test will sometimes vary depending upon the factual scenario confronting the court."  *Monette*, 90 F.3d at 1185 n.11; *see also McDonnell Douglas*, 411 U.S. at 802 n.13 ("The facts necessary will vary . . . and the specification . . . of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations.").  In fact, "[t]he requirements for establishing a *prima facie* case of discrimination are always context-dependent, and '[t]he key question is always whether, under the particular facts and context of the case at hand, the plaintiff has presented sufficient evidence that he or she suffered an adverse employment action under circumstances which give rise to an inference of unlawful discrimination.'"  *Thompson v. UHHS Richmond Heights Hosp., Inc.*, 372 F. App'x 620, 624 (6th Cir. 2010) ("Thompson's claim need not fit perfectly within one of our

_____

[7] More to the point, *why* did Lively not fill the position?  The only explanation offered to the Court, which Salada admitted during his deposition, is that the position was not filled on the advice of counsel.  The Court doubts such gamesmanship could result in summary judgment in CPC's favor.  Dunn cites a Tenth Circuit case for the proposition that active avoidance of the fifth prong will preclude summary judgment, *Fester v. Farmer Bros. Co.*, 49 F. App'x 785 (10th Cir. 2002), but this case appears off-base.  Although there was similar evidence in that case that the position had not been filled on advice of counsel, the court held there was sufficient evidence to suggest the position had been offered within two months of the plaintiff's discharge. *Id.* at 792.  Regardless, the Court concludes the evidence presented here is sufficient to establish a prima facie case of discrimination.

enumerated tests in order to survive summary judgment.") (quoting *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 703 (6th Cir. 2007)).[8]

In this case, Dunn not only offers evidence demonstrating that the gap between her termination and replacement was primarily due to litigation strategy, she also offers further evidence of discrimination. Dunn testified that Lively made comments regarding her need for time off and her cancer when he was dismissing her. These comments are strong evidence that Dunn suffered discrimination due to her disability. Further, Salada conceded that he urged Lively to terminate Dunn immediately because of her impending medical leave. Were there still a question about whether Dunn presented sufficient evidence to satisfy the prima facie case standard, these facts would put such doubt to rest.

Accordingly, the Court concludes Dunn has met her initial burden to establish a prima facie case of discrimination. The burden shifts to CPC to articulate a legitimate, nondiscriminatory reason for the adverse employment action.

### 2. Legitimate, Nondiscriminatory Reason

CPC articulates a legitimate, nondiscriminatory reason for Dunn's termination: Lively was unsatisfied with her performance. Dunn appears to concede this could constitute a legitimate, nondiscriminatory explanation for her termination as she focuses on discrediting CPC's explanation as pretext. Accordingly, CPC has met its burden and the burden shifts back to Dunn to demonstrate pretext.

---

[8] For instance, in the context of reduction-in-force cases where the plaintiff was not replaced, plaintiffs may bring other evidence demonstrating that the employer discharged the employee for impermissible reasons. *See Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 265 (6th Cir. 2010) (quoting *Barnes v. GenCorp Inc.*, 896 F.2d 1457 (6th Cir. 1990)).

13

### 3. Pretext

To discredit CPC's proffered nondiscriminatory reason as pretextual, Dunn must establish one of the following: "(1) that the proffered reason has no basis in fact; (2) that the proffered reason did not actually motivate the adverse employment action; or (3) that the proffered reason was insufficient to motivate the adverse employment action." *Sarvak v. Urban Retail Props.*, 524 F. App'x 229, 234 (6th Cir. 2013) (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994), *overruled on other grounds by Geiger v. Tower Auto.*, 579 F.3d 614 (6th Cir. 2009)). Because Dunn focuses on impugning Lively's testimony–on which CPC relies almost entirely–the Court assumes Dunn is arguing the proffered reason "did not actually motivate the adverse employment action," in which case Dunn must show "an illegal motivation was more likely than that offered by" CPC. *Id.* at 234-35.

As Dunn notes, CPC's argument that Lively was dissatisfied with Dunn's performance is based on two sources: Lively's own testimony and Salada's testimony.[9] The Sixth Circuit has indicated that subjective evaluations are "ready mechanisms for discrimination." *Sharp v. Aker Plant Servs. Grp., Inc.*, 726 F.3d 789, 802 (6th Cir. 2013) (quoting *Grano v. Dep't of Dev. of City of Columbus*, 699 F.2d 836, 837 (6th Cir. 1983)). In *Sharp*, the Sixth Circuit held that a conversation explaining the reasons for the plaintiff's termination created a genuine issue of material fact

---

[9] CPC also argues Dunn's employment only ended because she was "unwilling to even discuss, much less pursue, other opportunities in the company" (Court File No. 32, p. 13). However, as discussed *infra* at III.B.3, significant disputes of fact remain regarding what "options" Dunn was given and the extent to which she pursued them. If CPC is arguing Dunn was not actually terminated, CPC conceded for the purposes of this motion that Dunn "suffered an adverse employment decision" of some kind (*id.* at p. 10 n.66).

regarding whether the plaintiff was an inferior employee.[10]  *Id.*  The conversation linked the plaintiff's termination to his age: plaintiff was informed that he was "going to retire" and the employer had the opportunity to "bring the next generation[] in."  *Id.*  The court discounted poor performance evaluations in light of this evidence, because "the value of [the manager's] opinion is undermined by his comments ascribing his decision to [the plaintiff's] age."  *Id.*

Similar to *Sharp*, Lively's subjective explanations conflict with the alleged comments he made to Dunn when she was terminated.  According to Dunn, Lively told her that he needed "someone who can spend more hours here" (Court File No. 33-1, Dunn Dep, p. 22).  Because he was expecting a "big promotion" he needed "someone who can work full-time hours, possible overtime" but he knew she could not "do that right now" (*id.*).  Dunn noted "obviously, [she] had no control over getting cancer" (*id.*).  Lively reiterated, "I can't have times when I don't have somebody here to do the work that I need done . . . You've got to deal with your cancer and . . . that's what you should do, is just deal with that right now" (*id.*).

And unlike *Sharp*, there are no contemporaneous evaluations or other evidence supporting Lively's contention he was dissatisfied with Dunn's performance other than his and Salada's testimony.  Lively stated he was dissatisfied with Dunn's performance for months, but when pushed to explain why, Lively struggled to provide any specific reasons.  He did mention some broad-based dissatisfactions, such as his impression that Dunn failed to take initiative.  After some degree of prodding, Lively also mentioned an incident in which Dunn failed to convince Lively's credit card company to reduce a charge to his card, although Lively then admitted he failed in the same task (Court File No. 31-2, Lively Dep., at pp. 35-37).  Beyond a lack of contemporaneous evidence,

---

[10]  A positive letter of recommendation was also offered.

Lively did not select "Poor Job Performance" as the explanation for Dunn's termination on her employee termination form; instead, he wrote that Dunn "was not a good [l]ong term fit for the position" (Court File No. 33-2, Employee Termination Form). Because CPC's explanation conflicts with Lively's comments linking Dunn's termination to her disability, Dunn has met her burden to demonstrate pretext and summary judgment is inappropriate.

Moreover, Salada testified that Lively discussed his displeasure at some point–between two months and two days before Dunn's termination–but also that his main concern was Dunn's impending medical leave (Court File No. 31-3, Salada Dep., p. 36). Salada's testimony wavered between these positions. *Compare* (*id.* at p. 37) ("He did express that [Dunn's flex schedule] was difficult, but he didn't say it was a problem, per se. But we had a definite discussion that it was her performance that really made his - - made it problematic for him to keep her in that position.") *with* (*id.* at p. 35) ("[S]he was already a problematic employee, [who] wasn't getting the work done that he needed her to get done, that she had already used up all of her leave and that he was going to need someone doing that job who was actually there every day - - or, you know, on a regular basis - - to get the work done."). Most telling, however, is Salada's explanation of the impetus for Dunn's removal:

> But it wasn't until Ms. Dunn, as I recall it, came into our office and said: "Hey, I've kind of got a date certain now, I'm definitely going to get treatment and it's going to be after I qualify for FMLA," that I went upstairs, talked to Mr. Taylor; and we both went in to Mr. Lively and said: "Look, it's going to happen. If you don't make a decision about this to deal with her performance, you are going to be stuck with her as your assistant while she's on twelve weeks of leave. So you need to make a decision, before she becomes eligible for FMLA leave, as to whether or not you want to act on her performance or not."

(*id.* at pp. 37-38). Dunn's showing of pretext is even more convincing when Salada's testimony is juxtaposed with Lively's testimony: Whereas Salada admitted Dunn's condition and impending

16

leave were a topic of discussion, Lively claimed he had not discussed Dunn's condition or her leave request with Salada or Taylor (Court File No. 33-3, Lively Dep., at pp. 71, 101-02, 104). The discrepancy between Lively's and Salada's testimony further demonstrates that summary judgment is inappropriate on this claim.

For these reasons, the Court concludes Dunn has met her burden to demonstrate CPC's proffered explanation is pretext for discrimination. The Court will **DENY** CPC's motion on Dunn's discriminatory discharge claim.

### B. Accommodation Claim

CPC provides three bases for granting summary judgment on Dunn's accommodation claim: (1) she failed to exhaust her administrative remedies, (2) the accommodation she sought was not reasonable, and (3) CPC did not actually deny an accommodation.

### 1. Exhaustion of Administrative Remedies

Initially, Dunn argues CPC waived this argument when it did not plead exhaustion as an affirmative defense in its answer. Although Dunn is correct that administrative exhaustion is subject to waiver, *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982), raising the defense in a summary judgment motion is sufficient to avoid waiver in this case, *Young v. City of Cleveland*, No. 99-3275, 2000 WL 924590, at *3 (6th Cir. June 26, 2000) (holding, "[a]lthough it would have been better had defendants raised the [exhaustion] issue specifically in their answer," the plaintiffs were not prejudiced by the delay because the defense was raised in a motion for summary judgment). *See also Smith v. Sushka*, 117 F.3d 965, 969 (6th Cir. 1997) (holding failure to raise an affirmative defense in a responsive pleading does not always result in waiver because the purpose of Fed. R. Civ. P. 8(c) is notice and a chance to respond). The Court will therefore consider CPC's argument

17

on the merits.

A plaintiff suing under federal civil rights laws must exhaust her administrative remedies before bringing the suit in federal court. Filing an EEOC charge is a condition precedent to filing suit under the ADA. *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 309 (6th Cir. 2000). Claims not included in the charge may not be brought in a subsequently filed action. *Johnson v. Cleveland City School Dist.*, 344 F. App'x 104, 109 (6th Cir. 2009). However, "a plaintiff may bring suit on an uncharged claim if it was reasonably within the scope of the charge filed." *Id.* (citing *Davis v. Sodexho, Cumberland Coll. Cafeteria*, 157 F.3d 460, 463 (6th Cir.1998) ("[W]here facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim.")). Although courts take a particularly liberal view of charges drafted without the assistance of counsel, "that 'does not mean that a broad reading may not, or should not, be given in cases where a plaintiff has counsel.'" *Id.* (quoting *Cleveland Branch, N.A.A.C.P. v. City of Parma*, 263 F.3d 513, 536 (6th Cir. 2001)).

CPC primarily relies upon *Jones v. Sumser Retirement Village*, 209 F.3d 851 (6th Cir. 2000). In *Jones*, the plaintiff injured her back while at work and took time off to recuperate. After she returned to work, her doctor ordered that she lift no more than twenty pounds. Over the course of the next few months, her doctor's orders changed and she was instructed to work fewer hours and avoid physical exertions that would exacerbate her injuries. She required a second employee to work with her who could do all the heavy lifting. One employee refused to shoulder the extra burden and the plaintiff was forced to do some of these physically demanding tasks. After this aggravated the plaintiff's injury, her doctor ordered that she not return to work. Her employer subsequently informed the plaintiff that if she did not return to work within ten days she would be

18

terminated. The plaintiff was in fact terminated, and she filed a charge with the EEOC and later sued her employer raising both a discriminatory discharge claim and an accommodation claim.

On appeal, the Sixth Circuit overturned a jury award in the plaintiff's favor because she failed to exhaust her administrative remedies on the accommodation claim. The court noted that the charge did not explicitly allege her employer failed to accommodate her disability and that an accommodation claim did not "reasonably grow" out of the facts and claims in the charge. *Id.* at 853-54. Notably, the "date of discrimination" listed on the form was the date she was fired, not the earlier date on which she worked without the assistance she required. *Id.* Moreover, the facts relevant to discriminatory discharge and to failure to accommodate were different: the accommodation claim would focus on her work limitations, the failure to accommodate those limitations, and her aggravated injury; the discharge claim, on the other hand, would focus on her disability, her absence from work, her employer's leave policy, her ability to return to work, and her termination. *Id.* at 854 n.1. The court held that the plaintiff had not exhausted her administrative remedies because "the inclusion of a single date, identified only as the last day of work, does not trigger an investigation into whether [the plaintiff] was injured on that date as a result of a failure to accommodate," and "the liberal construction to be given charges filed by lay complainants pertains to legal and procedural technicalities. It cannot extend to include facts and claims not alleged." *Id.* at 854.

CPC argues this case is similar. Dunn's charge stated, "on August 18, 2011, I notified Mr. Lively that I would need to have surgery for my disability in September 2011 and would need medical leave. Thirty minutes later Mr. Lively terminated my employment because 'you are sick'" (Court File No. 31-1, Dunn Dep., Ex. 14). Dunn then claimed she was "terminated due to [her]

disability" (*id.*). The charge in this case lists the date of discrimination as August 26, 2011–Dunn's "last" day–rather than August 18, 2011–the day Dunn was told she would be terminated. CPC contends, as in *Jones*, Dunn failed to exhaust her accommodation claim because she listed her date of termination rather than the date she was told she would be terminated.

The Court disagrees. One crucial difference between *Jones* and this case is operative here: the requested accommodation was to take place *after* the termination date. CPC concedes that medical leave may constitute a reasonable accommodation. *Walsh v. United Parcel Serv.*, 201 F.3d 718, 726 (6th Cir. 2000). Unlike *Jones*, where the alleged lack of accommodation had already occurred (in the form of an unhelpful coworker whose refusal to do the heavy lifting caused the plaintiff to aggravate her injury), the claimed lack of accommodation here was anticipated medical leave that CPC sought to avoid *by terminating Dunn*. Thus listing the termination date as the date of discrimination was consistent with both a termination claim and an accommodation claim. Dunn's discharge claim and accommodation claim are intertwined: she was terminated because her disability required she obtain medical leave; she was denied medical leave as an accommodation. The charge specifically mentioned she sought medical leave and was subsequently terminated. Inquiry into the termination claim in this case would logically include inquiry into the accommodation claim.

This case is similar to *Moore v. Hexacomb Corp.*, 670 F. Supp. 2d 621 (W.D. Mich. 2009). In that case, the defendant similarly argued the district court lacked jurisdiction over an unexhausted claim, although it was the termination claim the defendant sought to preclude. The district court distinguished *Jones* and rejected the defendant's argument because "the failure to accommodate claim and the termination claim occurred, for all practical purposes, on the same date." *Id.* at 632.

20

The defendant sent the plaintiff home because he could not perform any available jobs at the facility due to his indefinite restrictions. The employer then treated the first twelve weeks of his absence as FMLA leave and terminated his employment thereafter. Because the employer's "determination that [the plaintiff] could not perform any available job due to his indefinite restrictions was tantamount to a termination," inquiry into the accommodation claim would have led to inquiry into the termination claim. *Id.*

For the reasons stated, this case is similar. Dunn's denied accommodation and discriminatory discharge both occurred when she was terminated due to her impending medical leave. Inquiry into one claim would lead to inquiry into the other. Accordingly, the Court concludes Dunn adequately exhausted her accommodation claim.

## 2. Reasonable Accommodation

In the alternative, CPC argues Dunn did not seek a *reasonable* accommodation. The ADA states that an employer may not "discriminate against a qualified individual with a disability." 42 U.S.C. § 12112(a). "Discrimination" includes an employer "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified . . . employee unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of [its] business." 42 U.S.C. § 12112(b)(5)(A); *see also U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 396 (2002). In a case alleging an ADA violation based upon a reasonable accommodation theory,

> (1) The plaintiff bears the burden of establishing that he or she is disabled.
> (2) The plaintiff bears the burden of establishing that he or she is "otherwise qualified" for the position despite his or her disability:
>> (a) without accommodation from the employer;
>> (b) with an alleged "essential" job requirement eliminated; or
>> (c) with a proposed reasonable accommodation.

21

(3) The employer will bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer.

*Kleiber v. Honda of Am. Mfg.*, 485 F.3d 862, 869 (6th Cir. 2007) (citation omitted). Here, the parties only dispute whether the requested leave was a "reasonable" accommodation.[11]

As indicated, medical leave may constitute a reasonable accommodation in certain circumstances. In *Cehrs v. Northeast Ohio Alzheimer's Research Center*, 155 F.3d 775, 782 (6th Cir. 1998), the Sixth Circuit noted that "[m]edical leave as an accommodation is not a novel concept." The court declined to institute "a *per se* rule that an unpaid leave of indefinite duration (or a very lengthy period, such as one year) could never constitute a 'reasonable accommodation' under the ADA." *Id.* (quoting *Norris v. Allied–Sysco Food Services, Inc.*, 948 F. Supp. 1418 (N.D. Cal. 1996)). However, the Sixth Circuit has subsequently clarified this holding to some extent, noting that *Cehrs* dealt with a "definite and relatively short leave" request "accompanied by a reasonable prospect of recovery." *Walsh*, 201 F.3d at 726-27. Employers are not required to allow an employee lengthy (over one year) or indefinite leave, but definite, relatively short leave periods may constitute reasonable accommodations. *Id.* The Sixth Circuit has subsequently approved of leave requests of six months in cases where the condition does not persist indefinitely. *See Cleveland v. Fed. Express Corp.*, 83 F. App'x 74, 79 (6th Cir. 2003).

In this case, however, CPC argues the requested accommodation was unreasonable because Dunn did not provide a specific start or end date for her requested leave. CPC relies upon a Tenth

---

[11] For the purposes of this motion, CPC concedes Dunn is disabled, is otherwise qualified for the position with or without a reasonable accommodation, and that CPC knew she was disabled (Court File No. 32, p. 14 n.94). CPC also has not argued that it would have suffered an undue hardship in this case and has offered no evidence of such a hardship.

Circuit case considering the reasonableness of a leave of absence. *Robert v. Bd. of Cnty. Comm'rs of Brown Cnty.*, 691 F.3d 1211, 1218 (10th Cir. 2012). The court identified "two limits on the bounds of reasonableness for a leave of absence": (1) the employee must provide an "estimated date when she can resume her essential duties," and (2) this end date must be in the "near future," which the court did not define, although it noted a six-month leave request would be too long. *Id.* In *Robert*, the plaintiff provided no evidence of the date she would resume the fieldwork required by her position. Her doctor's prognosis varied before and after surgery, but shortly before she was terminated she informed her employer she could be walking with a cane in three to four weeks. However, she also expressed concern that this time period might be "too fast" but she assumed her job would be available "'regardless of the length' of her recovery." *Id.* The plaintiff herself recognized she required "full mobility" to perform fieldwork, which would likely mean that this anticipated assisted walking would preclude her from meeting the requirements of her position. *Id.* Because "the doctor's prediction that Robert could walk with a cane in a month's time does not suffice to assure the county that she would then be able to perform site visits and other fieldwork," the plaintiff sought an "indefinite reprieve" from the essential functions of the job. *Id.* The court concluded the requested accommodation was unreasonable as a matter of law.

Consistent among these cases are two requirements: the leave must be finite and it must not be too lengthy. Contrary to CPC's contention, Dunn's request met both requirements in this case. Far from some ambiguous, indefinite leave request, Dunn informed Lively her surgery would be scheduled in September, and that she would need between four and eight weeks leave for recovery.[12]

---

[12] Her surgery eventually occurred in October, which CPC makes a point of mentioning. However, Dunn stated her surgery was moved to October because she had "some other issues," which were not further discussed (Court File No. 33-1, Dunn Dep., p. 17).

Although she noted that her doctors had delayed the surgery to accommodate her blood levels, she made it clear her doctors wanted to schedule it as soon as possible. She was far less equivocal about the time period than CPC now claims:

> Basically, I told him what my doctors had said about surgery, that they wanted to schedule it right after the anniversary date [in September] and that I - - I was telling him what they said about, if the cancer was just where they thought, that it would probably be four to six weeks' recovery. If they found more, it could be up to two months; but, obviously, they wouldn't know that until they got in there and started the surgery.

(Court File No. 33-1, Dunn Dep., p. 20). And as Salada conceded, it was the impending *certainty* of her surgery that was the catalyst for her termination (Court File No. 31-3, Salada Dep., pp. 37-38) (admitting that "it wasn't until Ms. Dunn . . . came into [the] office and said: 'Hey, I've kind of got a date certain now, I'm definitely going to get treatment and it's going to be after I qualify for FMLA,'" that Salada and Taylor pressured Lively to terminate Dunn). She informed CPC she would be having surgery in September 2011 and, at the outside, she needed two months of recovery time. Given the Court's reading of precedent, this leave request was reasonable.

Because CPC has not attempted to demonstrate accommodating this request would have imposed an undue burden, the Court must **DENY** CPC's motion on this ground.

### 3. Not Denied Accommodation

CPC also argues it actually *did* accommodate Dunn. Lively testified that he told Dunn there may be opportunities in other departments at CPC (Court File No. 31-2, Lively Dep.. at p. 96). CPC argues it therefore attempted to accommodate Dunn's request but she failed to make use of the accommodation. Dunn, however, denies Lively mentioned such opportunities and claims he merely told her to check with human resources to determine if there were any openings (Court File No. 34, Dunn Aff., ¶ 10). Moreover, she claims she did check with human resources and the only available

24

positions were part-time telemarketing jobs paying much less than what she was making at the time (*id.* at ¶ 12). CPC also points to Dunn's testimony that she thought it would be unfair to obtain a new position and immediately take leave. But Dunn claims she was referring to re-applying for her previous job at Covenant Transport, not for the alleged opportunities at CPC (*id.* at ¶ 11); (Court File No. 33-1, Dunn Dep., pp. 22-23). Given these factual discrepancies, summary judgment would be inappropriate.

More to the point, CPC has not established that Dunn's proposed accommodation would impose an undue hardship. Reassignment to a vacant position does constitute a reasonable accommodation in some circumstances. 42 U.S.C. § 12111(9)(B). However, reassignment is typically considered *if* the employee cannot be accommodated in her current position. *See Burns v. Coca-Cola Enters., Inc.*, 222 F.3d 247, 257 (6th Cir. 2000) ("[A]n employer has a duty under the ADA to consider transferring a disabled employee who can no longer perform his old job even with accommodation to a new position within the Company for which that employee is otherwise qualified."); *Bratten v. SSI Servs., Inc.*, 185 F.3d 625, 633-34 (6th Cir. 1999) ("[T]he ADA requires an employer to consider re-assignment to a vacant position if the disabled employee cannot be reasonably accommodated in his or her current job."). Even if Lively's discussion with Dunn could be characterized as an offer of a "counter accommodation," CPC must still demonstrate Dunn's proposed accommodation would cause an undue hardship. *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 202-03 (6th Cir. 2010) (discussing the "informal, interactive process" envisioned by 29 C.F.R. § 1630.2(o)(3)). The Court has rejected CPC's argument that Dunn's leave request was unreasonable as a matter of law. The burden then shifted to CPC to demonstrate the requested accommodation posed an undue hardship. CPC did not attempt to satisfy this showing. Because

Dunn has met her burden on summary judgment to demonstrate she was qualified to perform the duties of her position with a reasonable accommodation, the allegedly offered reassignment is beside the point.

Accordingly, the Court will **DENY** CPC's motion on this ground as well.

## IV. CONCLUSION

For the foregoing reasons, the Court will **DENY** CPC's motion (Court File No. 31).

**An Order shall enter.**


/s/_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**